## FILTER v. MOHR.

1. APPEAL AND ERROR—PHYSICAL FACTS—WITNESSES—QUESTION FOR TRIER OF THE FACTS—AUTOMOBILES.

    Whether the disclosed physical facts in action by administrator for death of motorcyclist involved in collision with defendants' automobile refute the claim of an interested witness is a matter for the trier of the facts.

2. EVIDENCE—PHYSICAL FACTS.
    No testimony can refute unquestioned physical facts.

3. APPEAL AND ERROR—CONFLICTING TESTIMONY.
    Supreme Court is reluctant to disturb findings which involve the adoption of one of two conflicting versions in testimony.

4. SAME—PREPONDERANCE OF EVIDENCE—QUESTION FOR TRIER OF THE FACTS.

    Supreme Court does not substitute its judgment on questions of fact unless evidence clearly preponderates in the opposite direction.

5. AUTOMOBILES—MOTORCYCLES—NEGLIGENCE — CONTRIBUTORY NEGLIGENCE.

    In action by administrator of estate of motorcyclist who died as result of injuries received in collision with automobile which had overtaken, and was about to pass motorcyclist, the speed of the vehicles, their distance from intersection and inhibitions of statutes as to overtaking and passing another vehicle at an intersection all bear upon questions of negligence and contributory negligence (1 Comp. Laws 1929, §§ 4693 [p], 4707 [c]).

6. SAME—EVIDENCE—QUESTION FOR TRIER OF THE FACTS.
    Issues of negligence and contributory negligence *held*, questions of fact under evidence as to skid marks, gouges upon pavement, and marks upon defendants' automobile and motorcycle upon which plaintiff's decedent was riding.

7. SAME—EVIDENCE—STATUTES—NEGLIGENCE—PROXIMATE CAUSE.
    Collision between defendants' automobile and plaintiff's decedent's motorcycle as former overtook and attempted to pass

latter near, but not within, intersection as defined by statute *held*, not to justify holding, pursuant to statute prohibiting overtaking and passing at an intersection another vehicle proceeding in same direction, that negligence of defendant driver in such attempt was the sole proximate cause of the collision, questions of negligence and contributory negligence being for trier of the facts as the mentioned statutes were not applicable (1 Comp. Laws 1929, §§ 4693 [p], 4707 [c]).

Appeal from Lenawee; Rathburn (George A.), J. Submitted January 21, 1936. (Docket No. 97, Calendar No. 38,728.) Decided April 6, 1936.

Case by August Filter, as administrator of the estate of Arnold Bilkey, deceased, against Claude C. Mohr and wife, for personal injuries and death of plaintiff's decedent as the result of a collision between an automobile and a motorcycle. Judgment for plaintiff. Defendants appeal. Reversed.

*Frank J. Riley,* for plaintiff.

*William B. Alexander,* for defendants.

BUSHNELL, J. In this action the trial court, sitting without a jury, rendered a judgment for plaintiff against both defendants in the sum of $7,626.08. The court found plaintiff's decedent free from contributory negligence, and that the proximate cause of the collision and resultant injuries was the negligence of Claude C. Mohr, in operating his wife's automobile.

On May 21, 1934, as defendants were driving easterly from Adrian on US–223, they observed Arnold Bilkey ahead of them on a motorcycle. West of Palmyra, Bilkey and the Mohrs passed a truck and then a car driven by witness Brown. The hour was about 9:45 p. m. and the weather clear. After passing the Brown car, Bilkey pulled over to the south side of

the paved highway, the Mohrs continuing on the north side, intending to pass the motorcycle. Mohr testified he was traveling at the rate of from 40 to 50 miles per hour and that Bilkey was slackening his speed.

Just ahead of them was the intersection of an unpaved road. At a point, estimated by Mohr to be from 20 to 60 feet west of this intersection and by others at a lesser distance, a collision occurred. Bilkey was thrown to the pavement, fell under his motorcycle, and, as the result of a broken neck, died three days later, never having regained consciousness. The Mohr car struck a telephone pole on the east side of the intersection, 65 feet from the skid mark of its tires on the pavement, and came to a stop 359 feet east of the probable point of collision. Narrower tire marks were also found two feet south of the center black line of the highway; some distance ahead, and five feet to the south, there were fresh gouges and scratches in the concrete. These measurements and observations were made by deputy sheriff Howland, who arrived at the scene shortly after the accident.

Neither the front nor rear of the motorcycle was damaged but its handlebars were bent and the brake lever on the left handlebar was sheared off. The tip of the left white rubber handlebar grip was scuffed. The Mohr car had a white groove in the top center of the right front fender, the right running board was gouged and torn away from the fender. The front and rear right hub caps of the automobile were damaged and the right rear fender was jammed. The top of the right front fender was the same height from the ground as the left handlebar of the motorcycle. The white mark began at the dent in the top of the fender and continued along the right side of

the Mohr car. The right door handle was broken and bloody. Other damages were caused to the left side of the car by its subsequent contact with the telephone pole, which was "broken off in two pieces."

Mohr sums up his version of the accident as follows:

"It is my claim that the real cause of the accident was that Arnold drove into the side of my car. He crossed the center of the road and got over on my side. This is the real reason that caused the accident, but I do not mean to say that the fact that Bilkey had speeded up and slowed down had anything to do with the accident.

"After I passed the Brown car I did not return to the right-hand side of the highway because the motorcycle was slowing up and was in front of the Brown car, and so I passed it at the same time."

Neither of the Mohrs, who were called by the plaintiff for cross-examination, could say positively that their horn was sounded, but Mrs. Mohr insists that Bilkey did not give any signal with his hand and that he was north of the center of the road at the time of impact.

Brown, who was called by defendants, claims he was 200 feet west at the time, and did not actually see the collision. He further testified:

"I heard the noise and I seen the motorcycle and boy go to the pavement. At the time I saw the motorcycle go to the pavement the Mohr car was still on the left-hand side of the center line of the highway.

"*Q.* And state whether or not you saw the motorcycle go towards the center line of the highway.

"*A.* I don't remember. * * * It is my judgment that the motorcycle and boy, after the accident, were not over two to four feet west of the intersection. The

back wheel of the motorcycle was across the black line in the middle of the road, and front wheel was pointed in a slant towards the southeast. I stayed at the scene of the accident for half or three-quarters of an hour. It had not rained before the accident, but did rain while I was there."

There are some discrepancies between the testimony of the eyewitnesses and the physical facts shown by the officers. Whether the disclosed physical facts refute the claim of an interested witness is a matter for the trier of the facts, *Sanderson* v. *Barkman,* 272 Mich. 179, but it is also true that "no testimony can refute the unquestioned physical facts, and no indulgence in arithmetical soliloquy can make it otherwise. * * * The court still heeds physical facts, even though disputed by testimony." *Brady* v. *Railway Co.,* 248 Mich. 406.

"We are reluctant to disturb findings which involve the adoption of one of two conflicting versions in testimony. *Watrous* v. *Conor,* 266 Mich. 397." *Paton* v. *Stealy,* 272 Mich. 57.

"The law permits the trier of the facts a wide discretion in determining what those facts are. We do not substitute our judgment on questions of fact unless they clearly preponderate in the opposite direction." *Leonard* v. *Hey,* 269 Mich. 491 (37 N. C. C. A. 111).

Appellants say, however, that the trial court held this to be an intersection case and contended that it was affected by 1 Comp. Laws 1929, §§ 4693, subd. (p), 4707 (c). The court said:

"May a collision happening 37 feet from an intersecting highway line be classified as an intersection collision? I am firmly impressed with the belief that the answer should be in the affirmative. In the case of *Anderson* v. *Detroit Motor Bus Co.,* 239 Mich. 390,

the driver of the plaintiff car stopped at a stop signal 40 feet back from the intersecting highway line. An ordinance of the village of Grosse Pointe Park required a complete stop before entering or crossing an intersecting highway. Stopping 40 feet distant from such intersection was held to be a compliance with such ordinance. In the instant case to place a construction that would only require the extra care within the four boundary lines of intersecting highways would be narrow and dangerous. Allowance must be made for a reasonable distance of approach. The 40-foot distance for compliance with the stop signal would clearly indicate that a compliance should at least begin as far or farther back than the 37 feet here indicated by the physical facts,'' etc.

Defendant driver was traveling on the left side of the road and attempting to pass another vehicle. The speed of the vehicles, their distance from the intersection at the time, and the inhibitions of the cited statutes, knowledge of which is chargeable to both parties, all bear upon the questions of negligence and contributory negligence.

There was enough evidence, relative to the place and character of the collision, the skid marks and gouges upon the pavement, the marks upon the car and absence of damage to the front and rear of the motorcycle, to present as an issue of fact defendants' negligence and decedent's contributory negligence. *Foote* v. *Huelster,* 272 Mich. 194.

The opinion of the trial judge indicates that his judgment was based in part upon the belief that the facts justified the application of the law of the so-called intersection cases.

Section 4707, subd. (c), 1 Comp. Laws 1929, reads:

''The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction at any steam or electric railway grade

crossing nor at any intersection of highways unless permitted to do so by a traffic or police officer.''

An intersection is defined by 1 Comp. Laws 1929, § 4693, subd. (p), as:

"The area embraced within the prolongation of the lateral curb lines or, if none, then the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other.''

This collision did not occur within the intersection, but the trial court, reasoning from the law as stated in *Hemington* v. *Hemington,* 221 Mich. 206, *Anderson* v. *Detroit Motor Bus Co.,* 239 Mich. 390, and *Fraley* v. *J. Calvert's Sons,* 266 Mich. 460, held the negligence of driver Mohr was the proximate cause of the collision and the resultant injuries. The court also determined that plaintiff's intestate did nothing that contributed thereto.

In *Hemington* v. *Hemington, supra,* plaintiff drove into a ditch in order to avoid striking a horse and buggy within the intersection, and the collisions in the *Anderson* and *Fraley Cases* were both within the boundaries of the intersection. The instant case is therefore distinguishable.

The questions of defendant's negligence and decedent's contributory negligence must be determined without the aid of the prohibitory language of 1 Comp. Laws 1929, § 4707, subd. (c), and the court was, therefore, in error in its application of this statute.

The judgment is reversed, with costs, and a new trial is ordered.

NORTH, C. J., and FEAD, WIEST, BUTZEL, EDWARD M. SHARPE, POTTER, and TOY, JJ., concurred.